J-A23010-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE:  PETITION FOR CHANGE OF NAME OF: D.A.C.,  A MINOR, FOR A NAME CHANGE TO: TO D.A.B., | : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.C., | : : | |
| Appellant | : | No. 1456 WDA 2014 |

Appeal from the Order entered on August 7, 2014
in the Court of Common Pleas of Allegheny County,
Family Division, No. FD 10-007364-016

BEFORE:  GANTMAN, P.J., LAZARUS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:               **FILED DECEMBER 03, 2015**

S.B. ("Mother") appeals the Order granting A.B.'s ("Father") Motion for Special Relief requesting that the name of the parties' minor child, D.A.C. ("Child"),[1] be changed to D.A.B.  We affirm.

The trial court set forth the relevant factual and procedural history in its Opinion, which we incorporate herein by reference.  ***See*** Trial Court Opinion, 10/31/14, at 1-4.

On appeal, Mother raises the following issues for our review:

1. Whether the trial court erred and committed an abuse of discretion in granting Father's name change Petition[,] where the evidence of record was insufficient to support a change of name?

---

[1] Child was born on November 3, 2009.

2. Whether the trial court erred and committed an abuse of discretion in following a tradition of patrilineal naming[,] and applying the best-interest standard in a gender-biased manner[?]

Mother's Brief at 4.

The standard of review in cases involving a petition for change of name is whether there was an abuse of discretion. *See In re Change of Name of Zachary Thomas Andrew Grimes*, 609 A.2d 158, 159 n.1 (Pa. 1992).

An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will. A finding by an appellate court that it would have reached a different result than the trial court does not constitute a finding of an abuse of discretion. Where the record adequately supports the trial court's reasons and factual basis, the court did not abuse its discretion.

*Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1123 (Pa. 2000) (internal quotation marks and citations omitted).

The court of common pleas of any county may, by order, change the name of any person resident in the county. *See* 54 Pa.C.S.A. § 702. There are no prescribed criteria for a trial court to consider when exercising its discretion upon a petition for change of name. Regarding the statutory provisions for a change of name, our Supreme Court has stated the following:

The focus of the statute and the procedures thereunder indicate a liberal policy regarding change of name requests. The necessity for judicial involvement centers on governmental concerns that persons not alter their identity to avoid financial

obligations. Beyond requiring compliance with the notice provisions, the statute provides no additional guidance for courts considering petitions for change of name. Absent any legislative criteria, courts reviewing petitions for change of name exercise their discretion "in such a way as to comport with good sense, common decency and fairness to all concerned and to the public."

*In re Grimes*, 609 A.2d at 160 (citation omitted); *see also In the Matter of Robert Henry McIntyre*, 715 A.2d 400, 402 (Pa. 1998).

As Mother's claims are related, we will address them together. In her first issue, Mother contends that the trial court erred and abused its discretion by finding that Father had met his burden of establishing that the name change was in Child's best interest. Mother's Brief at 8. Mother asserts the trial court's Order granting the name change was based on its determination that (1) granting the name change would solidify the bonds between Child and Father's family; (2) there is a social stigma associated with Mother's surname (which is the surname of her ex-husband ("Stepdad"); and (3) Child understood the significance of the name change. *Id*. at 9. Mother claims that the trial court's findings are not supported by the record. *Id*.

Mother argues that Child is aware of the identity of both Mother and Father, and shares a close bond with both of them, regardless of Child's surname. *Id*. at 10, 11. Mother points out that Father's wife ("Stepmom") testified that (1) Child is not treated differently at Father's family reunions because of his surname; and (2) Father and Stepmom never introduce Child

- 3 -

to others using Mother's surname. *Id*. at 11. Mother claims that such testimony does not support the trial court's determination that changing Child's name would positively impact the bond between Child and Father's extended family. *Id*.

Mother also argues that no testimony or evidence was presented regarding a social stigma associated with Mother's surname. *Id*. at 12. Mother contends that the only testimony presented regarding Stepdad's history of violence was the testimony of Mother, that Stepdad was criminally charged based on an incident against her; and the testimony of Father, who testified regarding his awareness of what Mother had told him about Stepdad. *Id*. Mother asserts that no evidence was presented that Father's surname has a higher regard in the community. *Id*. at 13.

Mother also claims that the trial court based its finding, that Child understood the significance of his name change, on Father's testimony that Child understood the distinction between step-siblings and half-siblings. *Id*. Mother points out that Child did not testify at the hearing, and argues that Child's understanding of familial relationships in a blended family does not signify that he understands the significance of changing his name. *Id*. Mother contends that Child knows how to spell her surname, but Child becomes confused after spending time with Father and Stepmom, who refer to Child using Father's surname. *Id*. at 13-14. Mother asserts that Child

will be further confused by having a different surname than Mother's other children, who attend the same school as Child. *Id*. at 15.

In her second issue, Mother claims that the trial court's decision to grant the name change was improperly based on the tradition of patrilineal naming. *Id*. at 15-16. Mother argues that each of Father's reasons for requesting the name change were based on his belief that a man should share the same surname as his father. *Id*. at 16. Mother contends that this was not a sufficient basis for the trial court to conclude that the name change was in Child's best interest. *Id*. Mother asserts that the trial court's Opinion reflects its bias towards the tradition of patrilineal naming. *Id*.

The trial court addressed Mother's claims and concluded that they lack merit. *See* Trial Court Opinion, 10/31/14, at 6-12. We concur with the reasoning of the trial court, and affirm on this basis. *See id*.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/3/2015

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

IN RE: PETITION FOR CHANGE OF
NAME OF:
     **D.A.C.**

▋▋▋▋▋▋▋▋▋▋

              a minor,

FOR A NAME CHANGE TO:
     **D.A.B**

▋▋▋▋▋▋▋▋

FAMILY DIVISION

Docket No.: FD 10-007364-016

Superior Court No.: 1456 WDA 2014

## OPINION

WALKO, J.                                        October 31, 2014

                  **S.C.**

Defendant ▋▋▋▋▋ (hereinafter referred to as "Mother") appeals this Court's August 7, 2014 Order of Court.[1] For the reasons set forth in this Opinion, this Order of Court should be affirmed.

### PROCEDURAL HISTORY

             **A.T.B.**

Plaintiff ▋▋▋▋▋▋▋ (hereinafter referred to as "Father") is the biological

      **D.A.B.**

father of ▋▋▋▋▋ (hereinafter referred to as "Child"), born on ▋▋▋▋▋.

Father originally discovered Mother was pregnant in April 2009 after Mother told Father that he

                                **J.C.**

was a "candidate" to be the father of the then-unborn Child. Mother was married to ▋▋▋

▋▋ (hereinafter referred to as "Stepdad") at the time of the Child's birth. Mother and Stepdad

have three (3) other minor children (hereinafter referred to as "other children") not associated

with this action. A Decree in Divorce was entered for Stepdad and Mother on July 12, 2013.

---

                                   **C.**

[1] Although Mother is listed with the surname "▋▋▋," the Court notes that many of the proceedings under this
matter also list her name as "▋▋▋▋."
         **S.E.**

1

On April 30, 2010, Father initiated a custody action by filing his Complaint in Custody seeking partial custody of the Child. The Generations Program was scheduled, but Father failed to pay the associated fees. Father's Complaint in Custody was dismissed on June 7, 2010. Father paid the Generations fees thereby rectifying the reason for dismissal, and his Complaint in Custody was reinstated by order dated June 18, 2010.

On July 28, 2010, the Court ordered Father to submit to paternity testing to prove that he was the father of the Child. The order stated that the parties (Mother and Father) would proceed through Generations if the test came back verifying that Father was the natural father of the Child. Shortly thereafter the August 2, 2010 Order of Court was entered disestablishing Stepdad's paternity, which was necessary in order to conduct paternity testing on Father and Child. Father proceeded to be tested pursuant to the Order of Court.

The results of the court-ordered paternity test were filed on September 30, 2010 in the form of a report. The report concluded, *inter alia*, that Father had a ninety-nine point ninety-nine percent (99.99%) probability of paternity to the Child. Subsequently Father filed his Acknowledgement of Paternity and Waiver of Trial on September 30, 2010. Father also filed a new Complaint in Custody seeking shared physical and legal custody on September 30, 2010.

On October 20, 2010, the Court entered an Interim Custody Order on Father's Petition for Special relief. The interim order granted Mother primary physical custody with periods of partial custody to Father as follows: (1) every other weekend from noon on Saturdays until 8:00 a.m. on Mondays, (2) on Thursdays prior to one of Father's custodial weekends Father shall have custody from 6:00 p.m. until 9:00 p.m., and (3) on Thursdays where Father does not have custody that upcoming weekend Father shall have custody from 6:00 p.m. until 8:00 a.m. Friday morning.

2

On December 14, 2010, following the Generations conciliation, the parties (Mother and Father) agreed to the current Consent Custody Order of Court. The consent order granted Mother primary physical custody, and Father was granted partial physical custody every Thursday from 4:00 p.m. until 9:00 a.m. Friday morning and every Saturday from 9 a.m. until Monday at 9 a.m. The consent order also indicated a holiday and vacation schedule. The parties also agreed to share legal custody.

Stepdad filed a custody action on January 28, 2014 seeking physical custody of the Child. The Court entered a Rule to Show Cause why *Stepdad's* Complaint in Custody should not be dismissed. The Rule stated that *Stepdad* did not plead sufficient facts to establish *in loco parentis* standing. The Court scheduled a hearing on March 14, 2014 to address whether *Stepdad* had standing to pursue a custody action for the Child. During the March 14, 2014 hearing, Father presented a written motion requesting the Child's name change to "*D.A.B.*" The Court, on Father's motion, ordered that a separate name change hearing would be scheduled at a later date.

While the issue of Stepdad's standing was pending, the Court entered an Order of Court dated March 21, 2014 requiring Father to serve notice of the name change hearing via two (2) publications. The Court ordered that the said publications shall run one (1) time in two (2) separate local news publications no later than thirty (30) days prior to the hearing date.[2] On March 21, 2014, Stepdad was granted *in loco parentis* standing, and the parties were ordered to proceed through Generations on Stepdad's Complaint in Custody. Generations subsequently scheduled the mediation session for June 30, 2014 by Order of Court dated June 4, 2014. No further action has been taken on this matter.

---

[2] The hearing date was originally scheduled via the 3/21/14 Order for June 4, 2014. The hearing was rescheduled to August 6, 2014 through a Motion for Continuance entered on April 25, 2014.

3

On July 30, 2014, Father filed his Proof of Publication indicating that notice of the name change hearing was published in the Pittsburgh Post-Gazette on April 2, 2014 and published in the Pittsburgh Legal Journal on April 21, 2014.

At the August 6, 2014 name change hearing, Mother presented an oral motion to dismiss or continue the matter based on improper notice. Mother indicated to the Court that the dates stated in the publications had the incorrect "June 4, 2014" date as opposed to the new continued date of August 6, 2014. As such, the public or any interested third (3rd) parties were not properly served. Father argued that the Child was only four (4) years old and does not have any debts or credit cards. The Court determined that proper notice was given as all relevant parties were present including Stepdad. The Court denied Mother's oral motion, and the hearing commenced as scheduled.

Following the August 6, 2014 hearing, the Court entered an Order of Court dated August 7, 2014 granting Father's Petition for Name Change and ordered the Child's name be changed from "D.A.C." ▮▮▮▮▮ to "D.A.B." ▮▮▮▮▮ Mother presented a Motion for Reconsideration on August 26, 2014. The Court denied Mother's request.

On September 4, 2014, Father presented a Motion for Contempt which was granted in part. Mother was not found to be in contempt, but the Court reiterated the 8/7/14 Order and ordered Mother to change the Child's surname to "B." ▮▮▮▮ at the Child's school.

Mother filed a Notice of Appeal of the August 7, 2014 Order of Court and a Concise Statement of Matters Complained of on Appeal on September 9, 2014.

## STANDARD OF REVIEW

The Pennsylvania Supreme Court within its opinion *In re Grimes*, 609 A.2d 158, 160 (1992) has stated that "the statutory scheme sets forth no criteria for the court to consider when

4

exercising its discretion upon a petition for a change of name." When a court considers the name change of a minor child, the Supreme Court stated that the "best interest of the child" standard should be used, and a court should consider the following:

> Specific guidelines are difficult to establish, for the circumstances in each case will be unique, as each child has individual physical, intellectual, moral, social and spiritual needs. **However, general considerations should include the natural bonds between parent and child, the social stigma or respect afforded a particular name within the community, and, where the child is of sufficient age, whether the child intellectually and rationally understands the significance of changing his or her name.** *Id.* at 161 (emphasis added).

The Pennsylvania Superior Court further extrapolated the following from the Supreme Court's decision:

> The "best interests [of the child]" standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being. On appeal, our scope of review is broad in that we are not bound by deductions and inferences drawn by the trial court from the facts found, nor are we required to accept findings which are wholly without support in the record. On the other hand, our broad scope of review does not authorize us to nullify the fact-finding function of the trial court in order to substitute our judgment for that of the trial court. Rather, we are bound by findings supported in the record, and may reject conclusions drawn by the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court. *In re Name Change of C.R.C.*, 819 A.2d 558, 561 (2003).

## DISCUSSION

Mother raises the following issues in her Concise Statement of Matters Complained of on Appeal:

> 1. The trial court committed an abuse of discretion when it granted Father's Petition for Change of Name where the evidence was insufficient to support the decision.
>
> 2. The trial court committed an abuse of discretion when it applied the best interest standard in a gender-biased manner.
>
> 3. The trial court committed an abuse of discretion when it failed to consider the Mother-Child relationship and followed a tradition of patrilineal naming.

5

4. The trial court abused its discretion in failing to consider that Child resides primarily with Mother and siblings with whom Child shared a surname.

5. The trial court abused its discretion and committed an error of law by failing to require Father to fully meet his burden in determining whether the name change was in the Child's best interest.

6. The trial court committed an error of law when it failed to consider Mother's right under 28 Pa. Code §1.6 to choose Child's name when the parents were unmarried at the time of the Child's birth.

7. The trial court committed an error of law by granting Father the right to choose the Child's surname contrary to the 1971 Equal Rights Amendment to the Pennsylvania Constitution, Article I, §28.

**The Court entered an Order for the Child's name change based on sufficient evidence.**
*(Matter Complained of on Appeal #1)*

Please refer to the Court's replies to Matters Complained of on Appeal #2 and #5, below.

**The Court did not err or abuse its discretion in entering an Order that applied the "best interest of the child" standard in a gender-neutral manner.**
*(Matter Complained of on Appeal #2)*

In her Second (2nd) Matter Complained of on Appeal, Mother argues that the Order represents an abuse of discretion of the "best interest of the child" standard in a gender-biased manner. The Court carefully and meticulously contemplated the record and holds the "best interest of the child" standard was applied in a gender-neutral manner. There is not one scintilla of evidence in the record that the Court acted in a gender-biased manner.

The Supreme Court has provided a general guide for "best interest of the child" determinations in a name change of a child. The Supreme Court stated that "general considerations should include the natural bonds between parent and child, the social stigma or respect afforded a particular name within the community, and, where the child is of sufficient age, whether the child intellectually and rationally understands the significance of changing his or her name." *In re Grimes*, 609 A.2d at 161.

6

The Court found, based on the *Grimes* factors, that the Child's best interest will be served by granting the name change as it will solidify the bonds between the Child and Father's family. Father credibly testified that at family functions, Father's family often questions why the Child has a different surname from Father. Father testified that he did not want the Child to grow up feeling alienated from Father's family. The Court permitted testimony for motive purposes detailing a situation at a **B.** ▮▮▮family reunion where a family member became distraught after the family member learned that he carried the surname of a man who is not his Father.

Furthermore, the Court found that there is a social stigma issue associated with the surname **"C."** ▮▮▮ Mother testified during cross-examination that Stepdad had multiple domestic violence charges against him including an incident where Stepdad hit Mother. The record shows that there is an active Protection from Abuse ("PFA") order against Stepdad. The PFA order includes Mother, her other children, and the Child at issue. As a result of the PFA, Mother credibly testified that Stepdad has not seen the other children for at least a year.

Stepdad was present for the hearing on Father's Name Change Petition. Stepdad did not testify despite being offered the opportunity to do so. The Court, in light of the testimony taken, found that the reputation of the **"C."** ▮▮▮surname will have a negative social stigma within the community that will negatively impact the Child in the future.

Although the Child did not appear to testify as he is only four (4) years old, the Court determined the Child understood the significance of a name change. The Court finds that Father credibly testified that the Child understands the distinction between step-siblings and half-siblings including those with different surnames. Father's wife, **T. B.** ▮▮▮ (hereinafter referred to as "Stepmom"), corroborated Father's testimony by credibly testifying that the Child has a loving relationship with Father's stepdaughter, **F.** ▮▮▮ Stepmom testified that Faith is her

7

daughter from another relationship, and despite having different surnames, the Child and ~~F.~~ treat each other as siblings. The Court accepted this testimony as further indication that the Child will not be confused if he shares a different surname than his other siblings through Mother. Mother's concerns, while understandable, are not controlling in this matter.

The Court ultimately found that the Child's best interest will be served by granting Father's petition for name change as it will foster a closer relationship between Father's extended family while maintaining his current relationship with Mother's family. At no time did this Court consider the "best interest of the child" standard in a gender-biased fashion. The record clearly shows there is no evidence to support Mother's assertion of gender-bias.

**The Court did not err or abuse its discretion in entering an Order that changes the Child's surname to that of the biological father instead of Mother's current surname.**
*(Matter Complained of on Appeal #3)*

In her Third (3rd) Matter Complained of on Appeal, Mother contends that the trial court abused its discretion by failing to consider the Mother-Child relationship and followed a tradition of patrilineal naming.

The Court determined that Mother's relationship with the Child will not be hindered by the name change. Mother's own testimony indicated that Father's relationship is not impeded by the ~~"C."~~ name. In the same vein Mother did not indicate how her relationship with the Child would change, if at all, if the Court granted Father's petition. The only evidence that Mother offered to refute Father's petition was that she did not wish for the Child to be confused by having a different surname than his siblings. Father credibly testified that the Child understands the concept of step-siblings and half-brothers.

The Court further found that Father's motive for seeking the name change was pure and meets the "best interest of the child standard." Father credibly testified that he offered Mother the

chance to hyphenate the surname such that instead of ▮▮▮ "C." or ▮▮▮ "B." it would read ▮▮▮ "E.- B."
▮▮▮[3]

Mother testified that if the Child has a different surname from his siblings, the Child will feel "left out" and isolated. The Court did not find Mother's testimony on the Child's feelings credible, nor did it find that Mother's relationship with the Child will be hindered.

Mother offered no evidence regarding the importance of the Child's surname to her family. Father, conversely, testified that ancestry is important to his family. Moreover, Stepmom testified that Father's immediate family visits with his extended family often. The Court, therefore, found that granting Father's petition will deepen the Child's connection with Father's extended family.

The current Consent Custody Order of Court dated December 14, 2010 provides Father with partial custody time. Mother argued at trial that she desired to keep the ▮▮▮ "C." name to prevent "confusion." Moreover, Mother indicated that the current surname ▮▮▮ "C." has not impeded Father's relationship. The evidence presented to the Court provides a different picture. When Father took the Child to family functions, the extended ▮▮▮ "B." family questioned Father as to why the Child holds a different surname. The Court, therefore, concluded that the Child's relationship with Father and his extended family is hindered to some degree by the ▮▮▮ "C." surname.

Mother testified that she is pregnant with the child of her fiancé. She further testified that despite her child *in utero* not being Stepdad's child, she intends to give the child Stepdad's surname. The Court had difficulty believing that Mother's fiancé would agree to such a stipulation, and found that Mother's testimony regarding it was not credible.

---

[3] The Court notes that Father did not want ▮▮▮ "C." in the hyphenated name as the Child had no association with Stepdad.

Based on the evidence presented by both Father and Mother, the Court found that the Mother-Child relationship will not be hindered by the requested change of name. Any notions of the Court following a "tradition of patrilineal naming" are merely incidental. The Court did not assume or apply any presumptions of this nature in its analysis.

**The Court did not abuse its discretion since Father has significant custodial time and relationship with the Child.**
*(Matter Complained of on Appeal #4)*

Please refer to the Court's replies to Matters Complained of on Appeal #3.

**The Court did not err or abuse its discretion when applying the "best interest of the child" standard as Father met his burden of proof.**
*(Matter Complained of on Appeal #5)*

In Mother's Fifth (5th) Matter Complained of on Appeal she argues that the trial court abused its discretion and committed an error of law by failing to require Father to fully meet his burden in determining whether the name change was in the Child's best interest. The Court concludes that there was no error or abuse of discretion as Father adequately met his burden.

Father presented ample credible testimony for the Court to conclude that the best interest of the Child would be served by granting the Petition for Name Change of the Child. Father credibly testified that once he discovered Mother was pregnant in April 2009 and that he *might* be the father, he took steps to be in the Child's life. Father had asked Mother if she intended to keep the Child since she was still married to Stepdad. Mother testified that Father told her to get an abortion, but the Court does not find this testimony credible.

Father testified that he attended the first prenatal exam with Mother. Stepmom credibly testified that Father wanted a paternity test to determine whether he was the Child's father. Father testified that he could not remember how he found out, but believes Mother called him after the Child was born. Father further testified that he visited the Child in the hospital and

10

requested genetic testing. Stepmom credibly testified that Father performed a paternity test from a drug store. The results indicated that Father was the biological father of the Child. The Court admitted the test results into evidence as Plaintiff's Exhibit 1.

The Court also considered evidence pertaining to the circumstances surrounding the Child's birth certificate. A paternity hearing was held on September 1, 2010 before a Hearing Officer ("H.O.") The H.O. found that "paternity is disestablished for the Child ... on the basis of fraud."[4] Father proceeded to add his name onto the Child's birth certificate once his paternity was established. The birth certificate was admitted as Plaintiff's Exhibit 3. Father began to forge a relationship with the Child shortly after paternity was established in September of 2010 and filed a custody complaint. The Court determined that based on this evidence, Father should have had an equal say in the decision to name the Child.

The Court finds *In re Name Change of C.R.C.* helpful for factual analysis. In *In re Name Change of C.R.C.*, the trial court determined that the bonds between the father and the child had not formed prior to the father's name change petition. 819 A.2d at 562. The trial court, as a result, could not appropriately use the *Grimes* factors to assist in the trial court's decision. *Id.* The Superior Court reversed the trial court and argued that Father did not present evidence that his name is held in higher regard within the community. *Id.*

The case *sub judice* is distinct from *In re Name Change of C.R.C.* as Father provided credible testimony and evidence that the Court in *In re Name Change of C.R.C.* found lacking. Father presented evidence that his name has higher regard in the community by testifying to the negative connotations associated with "C." ▮▮▮▮▮ Father, in particular, showed sincere concern regarding Stepdad's prior criminal record. Mother further testified that Stepdad has an active

---

[4] The caption of the September 1, 2010 hearing was FD-10-002073-016.

PFA order, and on cross-examination Mother testified that Stepdad had been abusive to her in the past. Mother also admitted that Stepdad signed an Acknowledgement of Paternity, despite the fact that paternity test results were pending.

### The Court properly considered the Mother's rights under 28 Pa. Code §1.6.
*(Matter Complained of on Appeal #6)*

In Mother's Sixth (6th) Matter Complained of on Appeal, she states that the Court erred when it failed to consider Mother's right under 28 Pa. Code §1.6 to choose the Child's name when the parents were unmarried at the time of the Child's birth.

"*B.*"

The Court did not err when it decided to change the Child's surname to ▆▆▆▆▆▆The language of 28 Pa. Code §1.6 states the following:

> The child of an unmarried woman *may* be registered with any surname requested by the mother. *If no other surname is so requested*, the child shall be registered with the mother's surname. [emphasis added]

Mother's argument is flawed on this matter as she credibly testified on cross examination that she knew that Stepdad signed the acknowledgement of paternity while the paternity results were still pending. Moreover, the H.O. concluded after the September 1, 2010 paternity hearing that Stepdad's establishment of paternity to the Child was fraudulent. Mother further admitted at the August 6, 2014 hearing that Stepdad was incorrectly listed as the biological father.

The Court further finds that although an unmarried woman is empowered to choose the child's surname, if another surname is requested, 28 Pa. Code §1.6 does not grant the unwed mother unilateral power to decide the child's surname. The Court finds the case of *In re Mull*, 18 Pa. D. & C.3d 290 (1981) informative on this point. The *In re Mull* Court suggested that the Equal Rights Amendment of the Pennsylvania Constitution prevents any distinction between the unwed mother and the unwed father. *Id.* at 293. The *In re Mull* Court further stated the Equal Rights Amendment has already disestablished unilateral decision-making power by one parent in

12

adoption proceedings. *Id.*; *see also Adoption of Walker*, 360 A.2d 603 (Pa. 1976). Additionally, as *In re Mull* illustrates, an unwed father can challenge the unwed mother's decision to name the child such that the "best interest" standard becomes controlling in the decision. *Id.* at 294-295.

In the case *sub judice* the evidence presented by Father shows that he wanted to be involved in the Child's life once it was determined he was the biological father. Mother instead unilaterally took it upon herself to give the Child her surname "C." ▮▮▮▮ without determining the identity of the biological father. Mother did not dispute doing so during cross examination. The Court finds that Mother clearly did not take into consideration the biological father's rights regarding the Child. Mother did not take appropriate steps to establish paternity. Finally, any rights that Mother has under 28 Pa. Code §1.6 are trumped by the best interest of the Child.

## The Court did not err by granting the Father's right to choose the Child's surname.

*(Matter Complained of on Appeal #7)*

In her Seventh (7th) Matter Complained of on Appeal, Mother asserts that the Court erred by violating the 1971 Equal Rights Amendment to the Pennsylvania Constitution, Article I, §28.

The Court finds that the Equal Rights Amendment was not violated as the Court specifically decided the August 7, 2014 Order of Court based on the best interest of the child. As stated under the Second (2nd) Matter Complained of on Appeal, *In re Grimes* is controlling in the case *sub judice*. In that case, the preference of the parent was not factored into the final decision. In the case *sub judice*, Father was not granted the right to choose the surname. The Court determined that it was in the Child's best interest to grant Father's petition.

13

## CONCLUSION

The Court carefully considered the Child's best interest pursuant to *In re Grimes* in granting Father's petition. The Court carefully entered its decision in a gender-neutral manner supported by sufficient credible testimony. Mother, in contrast, failed to present sufficient credible evidence to negate or rebut the credible evidence brought forward by Father.

For the foregoing reasons, this Court's August 7, 2014 Order of Court should be affirmed.

BY THE COURT:

_____, J.
Donald R. Walko, Jr., Judge